# STATE OF MICHIGAN

# COURT OF APPEALS

DONALD J. RHODA, Guardian/Conservator of
TREVOR RHODA, and TAMMIE WALKER,

        Plaintiff-Appellants,

v

PETER E. O'DOVERO, INC. d/b/a
MARQUETTE MOUNTAIN,

        Defendant-Appellee.

UNPUBLISHED
March 24, 2016

No. 321363
Marquette Circuit Court
LC No. 13-051044-NI

Before: GLEICHER, P.J., and K. F. KELLY and SERVITTO, JJ.

K. F. KELLY, J. (*concurring*).

I concur in much of the majority's analysis but write separately because I disagree with its conclusion that the snowboarding rail, albeit defective, was not an obvious and necessary danger inherent in the sport. I believe that such a conclusion goes beyond what is necessary to resolve the issue before us.

Defendant repeatedly concedes the gap in the snowboarding rail constituted a hazard and no snowboarders should have been using the rail. There is, therefore, no dispute that the rail as plaintiff encountered it was defective. That is precisely why defendant took certain measures to "close" the run. However, as the majority correctly concludes, in placing two red poles in an "X" formation at the top of the defective rail, defendant did not close the rail in the manner prescribed by Mich Admin Code, R 408.82. Consequently, I agree that defendant failed to comply with its statutory obligation under the Ski Area Safety Act of 1962 (SASA), MCL 408.321 *et seq.*, and in particular § 326a(d) of SASA, which requires ski area operators to properly mark a closed run. The consequence of this breach is that defendant is "liable for that portion of the loss or damage resulting from that violation." MCL 408.344.

*Rusnak v Walker,* 273 Mich App 299; 729 NW2d 542 (2006) compels that, even if plaintiff's accident was the result of an obvious and necessary risk inherent in the sport and plaintiff assumed such a risk under the assumption-of-the-risk provision in SASA, MCL 408.432(2), plaintiff is eligible to recover damages to the extent defendant's violation of SASA contributed to plaintiff's injury. *Rusnak* dealt with a situation in which a downhill skier was injured by an uphill skier. The plaintiff's suit was not brought against the ski area operator, as here, but was brought against the uphill skier. However, the same principle set forth in *Rusnak* applies with equal force here:

-1-

The actions or inactions of a defendant cannot always be irrelevant, for if they were, the duties and liabilities placed on individual skiers would have no meaning. Indeed, we cannot favor one section, such as the assumption-of-risk provision, over other equally applicable sections, such as the duty and liability provisions. Reading these provisions together while giving them full force and effect, we hold that a plaintiff assumes the risk of colliding with another skier because that is what the Legislature has specified under MCL 408.342(2), but a plaintiff can still recover limited damages against an individual skier if the plaintiff can prove that a defendant violated the duties placed on skiers [and ski area operators] and that the defendant's violation of the SASA caused the injuries suffered by the plaintiff, MCL 408.344. [*Rusnak*, 273 Mich App at 309.]

Applied here, *Rusnak* stands for the proposition that SASA's assumption-of-risk provision does not trump defendant's statutory obligation to properly mark that a course is closed. Thus, the majority properly concludes that defendant remains potentially liable for its proportionate share of fault for plaintiff's damages. *Rusnak* held:

when a plaintiff has adequately pleaded or proven that an incident occurred because of a defendant's violation of the SASA, those actions of the defendant are relevant for purposes of determining the allocation of fault—and thus damages—between the plaintiff and the defendant. Under this view, the plain language of the entire SASA is given force and effect. Not only is this reading consistent with the plain language of the relevant sections, it also conforms to the legislative purpose in enacting the SASA, i.e., to reduce the liability of ski operators while at the same time placing many, but not all, risks of skiing on the individual skiers. [*Id.* at 313-314.]

Instead of simply remanding the matter so that a jury may decide the comparative fault of the parties, I believe the majority takes an unnecessary step in addressing whether a "defective" snowboarding rail may constitute an obvious and necessary danger inherent to the sport of snowboarding. However, having concluded that the assumption-of-risk provision does not trump defendant's statutory obligations, the issue to be decided by a trier of fact is whether defendant's failure contributed to plaintiff's injury. *Rusnak* compels that, *even if* plaintiff's accident was the result of an obvious and necessary risk inherent in the sport, plaintiff is eligible to recover damages to the extent defendant's statutory violation contributed to plaintiff's injury. Therefore, the jury's inquiry will be the same whether plaintiff assumed the risk of encountering a defect in the rail or not. A jury will decide to what extent, if any, defendant's statutory failure contributed to plaintiff's injury and to what extent plaintiff's alleged intoxication and failure to heed some warnings likewise contributed to the accident. The majority's analysis on this issue appears to make factual conclusions on the ultimate issue of fault. I, therefore, disagree to the extent the majority may be read to conclude that, as a matter of law, a gap in a snowboarding rail is not necessary or obvious to the sport. Such a discussion is unnecessary to the resolution of the issue before us.

/s/ Kirsten Frank Kelly